DAVIS V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-149-CR

BARBARA JEAN DAVIS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

OPINION ON REHEARING

------------

The State has filed a motion for rehearing primarily seeking an affirmance based on the court of criminal appeals's June 23, 2004 opinion in 
Swearingen v. State,
 which clarified the standard to use in reviewing the grant or denial of a motion to suppress based on a warrant.  No. 110-03, 2004 WL 1393813, at *3 (Tex. Crim. App. June 23, 2004).  We have reviewed our opinion in light of this holding and have re-written applicable portions of our opinion to apply 
Swearingen.  
We do, however, deny the State's motion for rehearing, withdraw our June 17, 2004 opinion, and substitute the following in its place.

Appellant, Barbara Jean Davis, entered an open plea of guilty to possession of four grams or more but less than two hundred grams of a controlled substance, one count of a three count indictment.  Prior to entry of her plea, she filed a motion to suppress illegally obtained evidence along with a request for a 
Franks
 hearing.
  See Franks v. Delaware
, 438 U.S. 154, 98 S. Ct. 2674 (1978).  After a 
hearing on both, the trial court denied her motion to suppress and she entered her plea, reserving her right to appeal the trial court’s denial of her motion to suppress.
(footnote: 1)  The trial court later sentenced her to two years’ deferred adjudication community supervision and she timely appealed.  We reverse and remand.

Issues on Appeal

In one point, appellant complains that the trial court erred when it denied her motion to suppress evidence obtained from an illegal search of her residence.  She contends that the search and arrest warrant affidavit prepared by Officer John Wallace of the North Richland Hills Police Department fails to demonstrate, within its four corners, probable cause sufficient to justify the issuance of the warrant.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 18.01(b) (Vernon Supp. 2004).

Further, appellant contends that she offered sufficient evidence at the 
Franks
 hearing of several false statements in the affidavit that were 
made by Officer Wallace knowingly and intentionally, or with reckless disregard for their truth.  Because of these false statements, she contends that the warrant should be voided and any evidence obtained under it suppressed under 
Franks.
  438 U.S. at 155-56, 98 S. Ct. at 2676 (holding evidence inadmissable if seized under an affidavit that knowingly or recklessly contains a false statement material to the issue of probable cause and the remainder of the warrant, without the false statement, is insufficient to establish probable cause).

Review of the Trial Court Ruling on the Probable Cause Affidavit

After we handed down our original opinion in this case, the court of criminal appeals issued its opinion in 
Swearingen
 
v. State,
 which requires us to apply a deferential standard of review when reviewing the propriety of a search with a warrant. 
 The State, in its motion for rehearing, has asked us to modify our opinion in light of the new rule announced in 
Swearingen
.  Because the 
Swearingen
 opinion has not yet been released for publication, we will discuss its application to this case, but also include our previous analysis under 
Johnson,
 
Carmouche,
 and 
Guzman
 (applying an abuse of discretion standard, giving almost total deference to the trial court's determination of historical fact, but  then reviewing the trial court's application of the law de novo).  
Johnson v. State, 
68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).
 

In 
Swearingen
, the court of criminal appeals tried to clarify or create a distinction between the standards
 of review we should use when reviewing warrantless searches and searches pursuant to a warrant.  
2004 WL 1393813, at *1.  It also resolved the perceived split among three intermediate courts of appeals's standards for reviewing a magistrate's determination that probable cause existed to issue a search warrant:  
Ramos v. State
, 31 S.W.3d 762 (Tex. App.—Houston [1
st
 Dist.] 2000, no pet.); 
Daniels v. State
, 999 S.W.2d 52 (Tex. App.—Houston [14
th
 Dist.] 1999, no pet.);
 
State v. Bradley
, 966 S.W.2d 871 (Tex. App.—Austin 1998, no pet.).
(footnote: 2)  In accordance with 
Swearingen
, we apply the exception to the 
Guzman
 rule. 
 2004 WL 1393813, at *3.
  We are to use the deferential standard articulated in 
Gates
 and 
Johnson
.  
Id.
 at *2-3 (citing 
Illinois v. Gates
, 462 U.S. 213, 234-37, 103 S. Ct. 2317, 2330-32 (1983); 
Johnson v. State
, 803 S.W.2d 272, 289 (Tex. Crim. App. 1990), 
overruled on other grounds by
 
Heitman v. State
, 815 S.W.2d 681, 685 n.6 (Tex. Crim. App. 1991)).

Under these standards we look to the "totality of the circumstances" regarding the information contained in the affidavit.  
Johnson
, 803 S.W.2d at 289.  We give great deference to the magistrate's determination in whether the affidavit reflects a "substantial basis" for concluding that a search would uncover evidence of a crime. 
 Gates
, 462 U.S. at 236, 103 S. Ct. at 2331.  

Regardless, our review is limited to examining the four corners of the affidavit to determine whether probable cause exists.  
U.S. Const
. amend. IV; 
Tex. Const
. art. I, § 9; 
Tex. Code Crim. Proc.
 
Ann
. art. 18.01(b); 
Jones v. State
, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992), 
cert. denied
, 507 U.S. 921 (1993); 
cf. Cates v. State
, 120 S.W.3d 352, 355 n.3 (Tex. Crim. App. 2003) (setting forth the distinction between a suppression hearing and a 
Franks
 hearing where additional evidence may be admitted to show the falsity of assertions within an affidavit).  In this review, we are to determine whether there is a fair probability, not an actual showing, that contraband or evidence of a crime will be found in a particular place in light of the totality of the facts set forth in the affidavit.  
See Gates
, 462 U.S. at 239, 103 S. Ct. at 2332; 
Hennessy v. State
, 660 S.W.2d 87, 89 (Tex. Crim. App. [Panel Op.] 1983) (holding that the informant’s basis of knowledge, or reliability, along with his veracity, or credibility, are relevant considerations in the totality of the circumstances, citing 
Gates
).  The officer’s affidavit must provide the magistrate with a substantial basis for concluding that a search would uncover evidence of wrongdoing. 
 Gates, 
462 U.S. at 236, 103 S. Ct. at 2331; 
Swearingen
, 2004 WL 1393813, at *2.  The informant’s reliability or basis of knowledge is relevant in determining the value of his assertions.  
Gates, 
462 U.S.
 
at
 230, 103 S. Ct. at 2328.  Corroboration of the details of an informant’s tip through independent police investigation can also be relevant in the magistrate’s determination of probable cause.  
Id.
 at 241-42, 103 S. Ct. at 2334.  Likewise, the affidavit should set forth the foundation for the officer’s belief in an informant’s credibility and veracity.  However, “a deficiency in one may be compensated . . . by a strong showing as to the other, or by some other indicia of reliability,” all of which are relevant considerations under the totality of the circumstances.   
Id.
 at 233, 103 S. Ct. at 2329.  

Gates
 also instructs us that, as a reviewing court, we are to ensure that the magistrate had a substantial basis for concluding probable cause exists.  
Id.
 at 236, 103 S. Ct. at 2331; 
see Bower v. State
, 769 S.W.2d 887, 902 (Tex. Crim. App.) (holding we do not conduct a de novo review but look to the evidence as a whole and determine whether there is substantial evidence to support the magistrate’s decision), 
cert. denied
, 492 U.S. 927 (1989), 
overruled on other grounds, Heitman
, 815 S.W.2d at 685 n.6; 
see also Cates
, 120 S.W.3d at 355 n.3 (recognizing that before a 
Franks
 hearing may be held, defendant must make a substantial preliminary showing of falsity in the "four corners" of the probable cause affidavit).  
Because the trial court entered findings of fact and conclusions of law, we review this point on appeal by looking at the affidavit in light of the trial court's findings on the historical facts, giving deference to those findings. 
Swearingen
, 2004 WL 1393813, at *3.
(footnote: 3)
Analysis of the Trial Court's Probable Cause Challenge

In her motion to suppress, appellant claimed Officer Wallace's affidavit was deficient in two specific respects:  it failed to state sufficient underlying facts to support the confidential informant’s veracity, reliability, and basis of knowledge; and it failed to show sufficient independent investigation by the officer to corroborate many of the facts stated by this new, untested, and unknown confidential informant. 

Relying on 
Lowery v. State
, appellant contends that without having previously tested this informant’s reliability, Officer Wallace should have more clearly detailed what efforts he undertook to independently verify the confidential informant’s claims in his affidavit.  843 S.W.2d 136 (Tex. App.—Dallas 1992, pet. ref’d).  Appellant contends that the information allegedly verified by Officer Wallace is only proof of “innocent facts” that are totally unrelated to whether there is any additional or independent corroboration by this officer of the facts asserted by this new confidential informant.

First, the affidavit shows that all the incriminating information sworn to by Officer Wallace comes from an unnamed confidential informant who “has never given information to a law enforcement agency before.”  The officer states that he verified that the confidential informant had been a Tarrant County resident for over twenty years and that the informant had been gainfully employed for over ten years.  However, the officer fails to state how or when he verified this information about the informant or how this information makes this unnamed, untried informant more or less credible.

Officer Wallace also states in his affidavit that the confidential informant has familiarity with the packaging and characteristics of marijuana because the informant was arrested over six years ago on a "drug charge."  However, Officer Wallace does not state what type of drug charge was involved, his source for this information, or whether he verified any charges or convictions against the informant.  Thus, there is no basis to support the officer’s sworn representations in the affidavit concerning the informant’s familiarity or knowledge of what marijuana looks like, how it is packaged, or why the officer would rely on this alleged "drug charge" as the basis for the informant’s knowledge about marijuana.

The officer also claims in his affidavit that the confidential informant identified two people at the 8240 Ulster Drive residence, “Barbara Davis” and “Troy Davis,” who were “in possession of and growing a substantial quantity of . . . marijuana” and that the informant had seen “Troy Davis in possession of several handguns currently kept inside the residence.”  But the officer again fails to state how the informant knew what marijuana looked like, where the marijuana was growing, whether it was growing only inside, outside, or both, how many plants there
 were, or how many times the informant had observed it there.  Further, the affidavit does not state on how many occasions, if more than one, that the confidential informant had been to the residence and observed marijuana growing there.

As to Troy Davis’s alleged possession of handguns, Officer Wallace does not reveal what type of handguns Troy allegedly had, where they were kept inside the residence, or where the confidential informant observed Troy's possession of guns.  There is no information in the affidavit stating the number of times the confidential informant saw any weapons or drugs, or how many times he had been to the house, only that he had been to the residence within the seventy-two hours preceding Officer Wallace’s execution of the affidavit.
  Officer Wallace does not include any information showing that he verified the informant's claim to have been in the house within this time period or at any other time.  Likewise, the officer does not disclose 
how the informant knew these two people he saw in the residence, how he gained access to their house, how long they might have lived there, or whether either of them owned or controlled the house.  The affidavit gives no information from the informant or from any other independent source regarding the relationship, if any, between the informant and the suspects.

The officer then says he verified some of the other identification information in the affidavit.  He links a 1993 convertible red Ford Mustang owned and operated by a “Barbara Davis” to his own observation of the Mustang in the driveway at 8240 Ulster Drive.  The officer then states that he was able to identify “Barbara Lynn Davis” through a driver’s license check with the Texas Department of Public Safety, which showed that “Barbara Lynn Davis” had been issued a Texas driver’s license number 05853410, that her birth date was March 25, 1950, and that she was physically described as being 5'2", 105 pounds, with brown hair and eyes.  Officer Wallace next states that he conducted an “NRH computer check” to tie “Barbara Lynn Davis” to the Ulster Drive address and an “MVD” check on the red Mustang, Texas tag number LZB-25V, which showed that it was registered to “Barbara L. Davis” at 8240 Ulster Drive, North Richland Hills, Texas.  However, the officer never states that the “Barbara Lynn Davis” and “Barbara L. Davis” identified by these items is the same person as the “Barbara Davis” named by the confidential informant or the same as appellant, “Barbara Jean Davis.”

The officer also states that he verified “Troy James Davis’s” information through the Texas Department of Public Safety records as having driver's license number 04615205, and being described as a white male born December 1, 1974, 5' 6", and weighing 130 pounds with brown hair and blue eyes.  He states that he also checked criminal records that showed a “Troy Davis” had been arrested for assault and weapons offenses.  Again, however, the officer fails to clarify whether the “Troy Davis” identified by the confidential informant and the criminal records is the same person as the “Troy James Davis” identified by the officer.

In summary, the magistrate had to determine whether probable cause existed
 to issue a search warrant for the named location and an arrest warrant for the named individuals on the basis of an affidavit from an officer relying on an unknown, and untried, confidential informant that disclosed nothing beyond the following information:

the informant had never provided information to a law enforcement agency before, yet the officer states the informant's identity is known;

the informant needed to remain confidential for his “personal safety” and for the officer’s “safety with regard to an ongoing undercover investigation,” neither of which were supported or disclosed in the affidavit;

identifying information contained in the affidavit showing people with middle names that were not verified to match the names of the alleged suspects’ names, where the informant only provided their first and last names; and

the information of the alleged criminal activity was not specific as to number of times or continuousness of criminal activity, was not clear as to locations within or outside of the identified residence, and was not independently corroborated by any other source or surveillance.

This is the totality of information the officer gleaned from the confidential informant, little of which relates directly to potential crimes.  The affidavit does not contain any information that would tend to show that this informant’s information is reliable or that the officer undertook an independent investigation sufficiently thorough to compensate for the informant’s lack of history or reliability with this officer or department.  Additionally, the officer’s affidavit does not tell us how the informant knew the occupants, what his relationship to them, if any, was, what the occupants’ correct middle names were, or how long the informant had known the alleged occupants. 

While the State concedes that a confidential informant’s reliability is a factor for the magistrate to consider when reviewing the “totality of the circumstances” set forth in the affidavit to support probable cause, it contends that an independent investigation to corroborate the reliability of a new, untested confidential informant’s tip is not a requirement.  However, the failure to undertake verification diminishes the reliability of the tip under the “totality of the circumstances” when an informant is used for the first time and his identity is confidential.  
See Lowrey, 
843 S.W.2d at 141-42.  “While information from an unnamed informant alone does not establish probable cause, the informant's tip combined with independent police investigation may provide a substantial basis for the probable-cause finding.”  
Id
. at 141 (citing 
Janecka v. State, 
739 S.W.2d 813, 825 (Tex. Crim. App. 1987)).

Even though the State contends there is no requirement that police conduct an independent investigation to corroborate information provided by an informant, 
one could corroborate the facts showing or tending to show that a crime has been or will be committed by verifying those facts by some other means.  
See generally Gates
, 462 U.S. at 232, 103 S. Ct. at 2329 (describing factors to consider in the totality of the circumstances analysis).  
Officer Wallace's lack of independent verification of the true identity of the suspects and their alleged criminal behavior makes the information provided by this untested confidential informant critically deficient under a totality of the circumstances analysis.  This is particularly true when the affidavit is given not only to support probable cause to search the premises but also to arrest two particular suspects.

Based on the foregoing and while giving great deference to the magistrate's determination, we conclude and hold that the facts asserted in the affidavit are insufficient under the “totality of the circumstances” to establish that probable cause existed for the issuance of an arrest and search warrant on the appellant, her son, or their residence.  For this reason, we cannot conclude that the magistrate had a substantial basis for concluding that a search would uncover evidence of a crime.  We hold that conclusion of law number seven, which found that the totality of circumstances contained within the four corners of the affidavit supported the existence of probable cause, is erroneous.  We therefore conclude that the trial court abused its discretion in failing to suppress the evidence obtained as a result of the search warrant under the 
Swearingen
 analysis or under the 
Guzman, Johnson, Carmouche
 analysis.  We sustain appellant’s point on appeal insofar as it challenges the admissibility of the evidence seized under a search warrant that lacked probable cause.

Under the rules of appellate procedure, we are required to hand down an opinion that is as brief as practicable but that addresses every issue raised and necessary to a final disposition of the appeal.  
Tex. R. App. P.
 47.1; 
Sims v. State
, 99 S.W.3d 600, 604 (Tex. Crim. App. 2003).  Because sustaining this attack on the affidavit would require us to reverse and remand, potentially for a new trial, we must also address any other challenges to the affidavit that would necessarily be raised in a possible retrial.  For this reason, we will address appellant’s other challenge to the admissibility of the evidence seized under this search warrant under a 
Franks
 analysis.  
Franks
, 438 U.S. at 154, 98 S. Ct. at 2674.

Review of the Trial Court’s 
Franks
 Hearing Determination

We review a trial court’s decision on a 
Franks
 suppression issue under the same standard that we review a probable cause deficiency, a mixed  standard of review: “We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor while we review de novo application-of-law-to-fact questions that do not turn upon credibility and demeanor.”  
Johnson
, 
68 S.W.3d at 652-53
.  However, in a 
Franks 
hearing the trial court may consider not only the probable cause affidavit but also the evidence offered by the party moving to suppress because this attack on the sufficiency of the affidavit arises from claims that it contains false statements.  
Franks
, 438 U.S. at 155-56, 98 S. Ct. at 2676.

Under 
Franks
, a search warrant affidavit must be voided, and any evidence obtained pursuant to the search warrant excluded, if a defendant can establish by a preponderance of the evidence at a hearing that the affidavit contains a false statement made knowingly or intentionally, or with reckless disregard for the truth.  
Id.
 
 
Then, setting the false material aside, the movant must also show that the affidavit’s remaining content is insufficient to establish probable cause.  
Id.; see also Hinojosa v. State, 
4 S.W.3d 240, 246 (Tex. Crim. App. 1999). 
 

In 
Cates
, the court of criminal appeals explained the distinction between a probable cause challenge to a search warrant affidavit and a challenge to the truthfulness of a search warrant affidavit:

When a challenge is made as to whether a search warrant affidavit is legally sufficient to show probable cause, the trial court is limited to the "four corners" of the affidavit.  This is 
entirely different from a challenge to the truthfulness of a warrant affidavit
 and whether the affiant made knowing misrepresentations to establish probable cause.  When the defendant challenges the warrant affidavit on the ground that it contains known falsehoods, as is the case here
, the trial court is not limited to the "four corners" of the affidavit
. Limiting a falsity challenge to the four corners of the warrant affidavit negates the underlying challenge and raises 
serious due process concerns
.  Thus, if a defendant has made a substantial preliminary showing of deliberate falsity, the trial court is
 required
 to go behind the "four corners" of the affidavit in a 
Franks
 evidentiary hearing.

Cates,
 120 S.W.3d at 355 n.3 (emphasis added) (citations omitted). To be entitled to a 
Franks
 hearing, a defendant must first make a preliminary showing that (1) the affidavit contains a false statement made knowingly or intentionally, or with reckless disregard for the truth, (2) the false statement is material to establishing probable cause, and (3) the remainder of the affidavit, when considered without the false information, is insufficient to establish probable cause.  
Franks
, 438 U.S. at 155-56, 98 S. Ct. at 2676.
  

In this part of appellant’s point, appellant challenges the trial court’s ruling denying her motion to suppress the evidence obtained due to falsities contained within the affidavit 
after
 the trial court held a 
Franks
 hearing.
(footnote: 4)   The State contends that appellant failed to show by a preponderance of the evidence that the affidavit contained false statements and that the affidavit, without those false statements, is insufficient to support probable cause for issuance of the warrant.

Analysis of the Trial Court’s 
Franks
 Ruling

At the 
Franks
 hearing, appellant called Officer Wallace to the stand, offered Officer Wallace’s deposition from a related civil matter into evidence, and called several witnesses to support her challenge to the accuracy of several statements contained within the search and arrest warrant affidavit.  Appellant identifies five statements in the affidavit that she claims are false:

1) that the confidential informant was a resident of Tarrant County for twenty years and employed there for ten years (paragraph 4.B.);

2) that “Barbara Lynn Davis,” a white female with a date of birth of March  25, 1950, is in control of the house and place to be searched (paragraph 3);

3) that appellant’s driver’s license number is the same as the number identified for “Barbara Lynn Davis” (paragraph 4.G.); 

4) that a “Barbara Lynn Davis” is the actual person residing at the Ulster Drive address, the target residence (paragraph 4.H.); and 

5) that the red Mustang parked in the Ulster Drive driveway is registered to “Barbara L. Davis.”  

The first, contained in paragraph 4.B., states that the confidential informant had been a resident of Tarrant County for over twenty years and gainfully employed in Tarrant County for over ten years.  Appellant produced an affidavit from one of the confidential informant’s cousins, Lisa Davis.  Lisa stated that the informant, Chris Davis, had not been a resident of 
Tarrant County, Texas consecutively over the past twenty years.  She disclosed that Chris had lived in Las Vegas, Nevada.  Chris also admitted that he has lived in Tomball and White Oak, Texas.  Further, contrary to Officer Wallace's representation in his sworn affidavit, Chris admitted that he had worked part-time for about four months while he was in Las Vegas; thus, he was not employed solely in Tarrant County for ten years.  

Officer Wallace admitted that he had never met the confidential informant in person, that he had only talked with the informant over the phone, and that he had relied on the alleged informant’s father, Bob Davis, another person he did not know, to verify the informant’s residential and employment history.  Chris also testified that his full name is Robert Christopher Davis and that his father is Robert Lawrence Davis.  Officer Wallace conceded that he had no way to verify that the people he talked with on the phone were actually the people named.  Officer Wallace also confirmed that he had called Chris on instructions from Officer Wallace's supervisor, who had taken the preliminary call from Chris’s father.  Both Chris's residential history and his employment history were inaccurate, despite Officer Wallace's swearing that he had verified these two facts. 

The next statement appellant claims is false appears in the third paragraph of the affidavit.  Officer Wallace swears here that “Barbara Lynn Davis, W/F, 3/25/50" is in control of the house to be searched.  Officer Wallace admits that the information he supplied regarding “Barbara Lynn Davis” has nothing to do with this appellant and that “Barbara Lynn Davis” does not reside at the subject house.  Obviously, this information is therefore inaccurate.  The State, however, claims that this is irrelevant because Officer Wallace did not know that “Barbara Lynn Davis” and “Barbara Davis” named by the informant were not the same person.  However, this discrepancy goes directly to the reliability and credibility of the informant and the lack of clarification and independent investigation by Officer Wallace.

Similarly, paragraphs 4.G. (regarding the driver’s license information) and 4.H. (regarding “Barbara Lynn Davis” as residing at the target house and the Mustang’s registration to “Barbara L. Davis”) of the affidavit are false.  The evidence showed that the “Barbara Lynn Davis” named by Officer Wallace in the affidavit does not live at 8240 Ulster Drive, that the driver’s license number Officer Wallace gave does not match the driver’s license number of appellant, “Barbara Jean Davis,” and that the red Mustang is not registered to “Barbara L. Davis” as Officer Wallace also swore in his affidavit.  Thus, it is clear that much of the identifiers used by Officer Wallace were totally false and that he did little, if anything, to verify the accuracy of those identifiers, yet he swore to the accuracy of the facts in his affidavit.  He concedes he did not check the address on “Barbara Lynn Davis’s” driver’s license, which would have shown a completely different address.

While Officer Wallace might not
 have actually 
known
 this information was inaccurate, he 
knew that he had not verified 
this information despite swearing otherwise and that the preliminary information on these two people had come from a new informant.  This failure to verify shows that Officer Wallace could have known and should have known of the falsity of the information and that he failed to verify the information with reckless disregard for its truth or accuracy.

Additionally, the warrant identifies a “Troy James Davis” as the suspect, whereas the confidential informant merely identified a “Troy Davis” as the suspect residing at the Ulster Drive location and as the person whom the informant saw in possession of several handguns.  The license check Officer Wallace ran was on a “Troy James Davis,” yet the criminal history check he ran that revealed some prior offenses was only on a “Troy Davis.”  Officer Wallace did not ever explain if and how he verified that these two people were one and the same.  Despite only having the name “Troy Davis” to go on from the informant, Officer Wallace never identified or disclosed whether this “Troy Davis” was the same “Troy James Davis” identified as the suspect in his sworn affidavit. Officer Wallace admitted that he had no background "intelligence" when he presented his affidavit to the judge.  He had not verified appellant's or her son’s involvement with drugs or that her residence or the vehicle parked in the Ulster Drive driveway were related to any drug use or drug business.  Likewise, Officer Wallace admitted that he had undertaken no independent investigation regarding the identity, credibility, or reliability of the confidential informant or the informant’s father upon whom he relied, yet still claims to have only made a mistake.
(footnote: 5)
 Further, there is no indication to support Officer Wallace's statement that the informant knew of the characteristics or packaging of marijuana.  Officer Wallace never asked how the informant knew what marijuana looked like.  He also failed to ask whether the informant was able to identify which plants contained the THC substance, male or female; Officer Wallace admitted that he did not ask because he did not know the difference either.  Likewise, although Officer Wallace mentioned magazines, books, ledgers, notes, and computer files regarding distribution of marijuana in his affidavit, he admitted that the informant did not tell him that any of these items, other than the magazines, were at the residence.
(footnote: 6)
 Officer Wallace also concedes he did not independently verify that the informant went back into the residence to substantiate the existence of the marijuana within seventy-two hours of the issuance of the warrants.  Instead he states,  "The drugs were substantiated 
after
 the search warrant.  We did find drugs in there . . . . The confidential informant was sent inside the residence and verified that there was [sic] drugs inside the residence." [Emphasis added.]  Officer Wallace further states that he did not personally see the confidential informant go inside the residence, and neither did anyone else; the confidential informant
 
only 
told
 him that he went inside the residence.  Further, Officer Wallace concedes he did not undertake any type of independent surveillance of the suspects or attempt any buys either to confirm the existence of any drugs or to show that the suspects were dealing in drugs.  In addition,
 Officer Wallace admitted that the informant was wrong about the number of plants, their size, their condition, and their location.

Regarding the weapons allegedly in Troy’s possession, Officer Wallace did not require nor did the informant verify the number of weapons or their location in the residence, yet the officer requested a “no knock entry.”  The officer believed he had obtained authority from the judge but could not point to anything in the resulting warrant giving them permission for the “no knock entry.”

In light of the lack of evidence to support the confidential informant’s information or the informant’s reliability, coupled with the attesting officer’s failure to corroborate the allegedly illegal activity in particular, we must conclude that the officer, at a minimum, made several statements in his affidavit with reckless disregard for their truth and knowingly made false assumptions and statements regarding appellant’s identity, location, and vehicle.
 Thus, it is clear that Officer Wallace’s affidavit contained several falsehoods, some that related to the background of the untested confidential informant, others that related to verification of the actual identities of both targets and the location of one of them, and still others that were made with reckless disregard of the truth or accuracy regarding the illegal activity claimed.   We cannot agree with the State that these falsities were mere "mistakes" the officer made when the evidence shows that the officer made these sworn statements with reckless disregard for their truth.  When the false statements are removed, there remains no probable cause to support the arrest of the two individuals who were named, "Troy James Davis" and "Barbara Lynn Davis."
(footnote: 7) Likewise, when we remove the false statements the officer made regarding his verification of the reliability and credibility of the informant and the informant's knowledge of marijuana, there remains no probable cause to support the issuance of a search warrant at the target residence.  Therefore, we conclude the warrants must be voided and any evidence obtained from the search must be excluded.  
See Franks
, 483 U.S. at 155-56, 98 S. Ct. at 2676.  

Conclusion

Because we have determined that the trial court should have granted appellant’s motion to suppress due to the search and arrest warrant's lack of probable cause under the totality of the circumstances and inclusion of statements made with reckless disregard for the truth, as shown at the 
Franks 
hearing, we sustain appellant’s sole point.  The judgment of the trial court is reversed and the case is remanded to the trial court for disposition in accordance with this opinion.

TERRIE LIVINGSTON

JUSTICE

PANEL B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

PUBLISH

DELIVERED:
  August 5, 2004

 

 

 

FOOTNOTES
1:
Judge C.C. “Kit” Cooke was assigned to Tarrant County Criminal District Court Number Three and heard the pretrial motions and presided at the trial. 

2:
Since 
Guzman
 was issued in 1997, this court has used a deferential abuse of discretion standard of review.  We give almost total deference to a trial court's or magistrate's determination of facts but review the trial court's application of law to the facts de novo. 
 
Johnson, 
68 S.W.3d at 652-53; 
Carmouche
, 10 S.W.3d at 327; 
Guzman
, 955 S.W.2d at 89.
 

3:
A copy of the officer’s affidavit is attached as appendix "A" to this opinion, and a copy of the trial court’s findings of fact and conclusions of law is attached as appendix "B" to this opinion.

4:
In its brief, the State challenges the trial court’s decision to even hold a 
Franks
 hearing, claiming appellant failed to make a preliminary showing of deliberate, false statements. 
 The State has not filed its own appeal challenging the propriety of the court’s decision to hold a 
Franks
 hearing, so we will not address it.
  
Tex. R. App. P.
 25.2(a)(1); 
Tex Code Crim. Proc. Ann.
 art. 44.01(a)(5), (c) (Vernon Supp. 2004).

5:
In the 
Franks 
hearing, we learn from Officer Wallace that he actually knew there was some familial relationship among all the Davises and that there was an indication of problems among the confidential informant, his father, and the appellant, yet he never disclosed the familial relationship among the informant and the suspects in his affidavit.

6:
The affidavit states that it is the affiant's experience that persons involved in the manufacture and sale of drugs often keep such items.

7:
As we know, "Barbara Lynn Davis" was not even the person who was actually arrested.  This is particularly troubling since this warrant was not solely a search warrant.